## Widow DUFRESNE *v.* M. HAYDEL.

The husband of the plaintiff, having 155 80-100th acres in his front tract, paid into the hands of the receiver of public monies, $145 75, for a certificate of the entry of 119 acres of the lands in his rear.  *Nicholas Haydel*, under whom the defendant holds, owned a front tract, containing 249 54-100th acres, and paid into the hands of the receiver of public monies, the price of 248 acres, for his entry of the back lands.    The whole quantity of land in the rear, subject to their entries, was 322 48-100th acres.    Of this quantity, a surveyor of the United States allotted to *Haydel* 243 20-100th acres, and *Dufresne* 79 28-100th.    His survey was approved, March, 1831, by the surveyor of public lands, and a patent was issued to *Haydel* for 243 20-100th acres of the land, in 1845.    The plaintiff claimed that the land should have been divided, proportionably to the quantity in the front tracts, and brought suit to obtain that division.  Her action was sustained.  *Held :*  The authority given, by the act of Congress, to the surveyor, to make an equitable division of the land between the claimants, is in affirmance of the act authorizing each [front proprietor] to purchase an equitable proportion of the land, [in his rear,] and neither adds any thing to, nor takes any

<div style="text-align:right"><strong>DUFRESNE</strong><br><em>v.</em><br><strong>HAYDEL.</strong></div>

thing from, the rights of the parties; he is a ministerial officer, bound to perform this duty, not as he may choose, but equitably; and if he does not, the injured party may resort to a court of justice, or there would be a right without a remedy, in derogation of the first article of our Code of Practice.

The act of Congress expressly entitles the plaintiff to an equitable division of the back lands with the only proprietor whose claim came in conflict with hers.

In the sale of the public lands, the government and its purchasers must be governed by the same principles which apply to individual vendors and vendees.

When a patent issues, it irrevocably divests the government of title, in favor of the patentee; but if the land already belongs to an individual, either by sale or legal confirmation, the subsequent issue of a patent to another person, inures to the benefit of the true owner.

APPEAL from the District Court of the Parish of St. Jean Babtiste, *Duffel*, J. St. Paul, for plaintiff. *Louis Janin*, for defendant. By the court: (*Eustis*, C. J., absent.)

PRESTON, J. The plaintiff and defendant are respectively proprietors of tracts of land, fronting the Mississippi river, immediately above and below a point on the river, or convex bend, which were confirmed to them.

Congress, by the 5th section of an Act, approved the 15th of February, 1811, provided, "That every person who, either by virtue of a French or Spanish grant, recognized by the laws of the United States, or under a claim confirmed by the commissioners appointed for the purpose of ascertaining the rights of persons claiming lands in the Territory of Orleans, owns a tract bordering on any river, creek, bayou, or water course, in the said Territory, and not exceeding in depth forty arpents, French measure, shall be entitled to a preference in becoming the purchaser of any vacant tract of land adjacent to and back of his own tract, at the same price and on the same terms and conditions as is or may be provided by law for the public lands in said Territory. And the principal deputy surveyor of each district, respectively, shall be and he is hereby authorized, under the superintendence of the surveyor of the public lands south of the State of Tennessee, to cause to be surveyed the tracts claimed by virtue of this section. And in all cases where, by reason of bends in the river, lake, creek, bayou, or water course, bordering on the tract, and of adjacent claims of a similar nature, each claimant cannot obtain a tract equal in quantity to the adjacent tract already owned by him, to divide the vacant land applicable to that object between the several claimants, in such a manner as to him may appear most equitable." 1 Land Laws, 588.

This provision of law was revived and reënacted by the 7th section of an Act, approved the 11th of May, 1820. 1 Land Laws, 779.

Those, under whom the plaintiff and defendant hold their lands respectively, availed themselves of the preëmption accorded by this law. The husband of the plaintiff, having 155 80-100th acres in his front tract, paid into the hands of the receiver of public monies $148 75, for a certificate of the entry of 119 acres of the lands in his rear. *Nicholas Haydel*, under whom the defendant holds, owned a front tract containing 249 54-100th acres, and paid into the hands of the receiver of public monies, the price of 248 acres, for his entry of the back lands under the law.

The whole quantity of land in the rear subject to their entries was 322 48-100th acres, as to which there was no conflict between them and any other proprietors. Of this quantity, a surveyor of the United States allotted to *Haydel* 243 24-100th acres, and to *Dufresne* 78 28-100ths. His survey was approved, in March, 1831, by the surveyor of public lands south of Tennessee river, and a patent was issued to *Haydel* for 243 20-100th acres of the land, in 1845.

If the land subject to the entries had been divided between the claimants proportionably to the quantity contained respectively in their front tracts, *Haydel* would have received 201 acres, and *Dufresne* 121 acres. *Mrs. Dufresne* claims that the land should have been divided proportionably to the quantity in the front tracts, and brings this suit to obtain that division.

The Act of Congress was the foundation of the title to the lands, and fixed an exact rule by which the quantities to be sold to the respective parties was to be ascertained. An equitable division, in case of deficiency in quantity for each, is a ratable division in proportion to the quantities in the front tracts, unless something prevents it. The original instructions of Mr. Gallatin, the Secretary of the Treasury, for the execution of the Act of 1811, indicated this rule to the surveyor and the commissioners of the general land office, by a letter of the 14th of July, 1845, laid it down as an arithmetical rule to govern such cases.

The surveyor was to measure the land for each purchaser, and run the line of division between them.

It was a ministerial duty   There could, in this case, be but one equitable line: that which would give the plaintiff 121 acres and to the defendant 201 acres. A fixed rule was given to ascertain the quantity of each, and any deviation from it, was in violation of the Act of Congress, and gave no rights to the defendant, and could take away none from the plaintiff.

The Act of Congress thus expressly entitled the plaintiff to an equitable division of the back lands, with the only proprietor whose claim came in conflict with hers. An extraordinary position of the tracts might possibly render a proportional division inequitable. But, in this case, there is no pretence, much less reason, offered for not having made a proportionable division. By the bare inspection of the map, it will be seen that the surveyor might, by extending the side lines of each proprietor's front tract, have given each about his proportion of the back lands. That this should have been done, when possible, we have no doubt, was the intention of Congress.

By an inspection of the map, it is palpable that not an equitable, or even discretionary, division of the land, was made between the two claimants. The surveyor simply took from one party forty acres of land, which he had purchased from the government, and for which he had paid, and for which he had the best possible title, by an Act of Congress, and gave it to another man who had no title whatever to it but the will of the surveyor. This was a most inequitable proceeding, directly in conflict with the Act of Congress, and cannot be recognized by a court of justice.

It is said, however, that the disposition of the public lands is in the power of Congress under the direction of their officers, and that they have given a patent to the defendant for the lands in controversy, which is a complete divestiture of the title of the United States in favor of the defendant.

In the sale of the public lands, the government and its purchasers must be governed by the same principles which apply to individual vendors and vendees. 9 Peters, 760. Vattel's Law of Nations, book 1, ch. 17, § 199 ; ch. 23, § 295; book 2, ch. 7, § 83 ; ch. 1, § 14.

Now the government, by the entry of the register of the land office, and the receipt of the purchase money by the receiver of public monies, sold a tract of land to the vendee, containing 119 acres, if such quantity could be obtained, in the rear of his front, without infringing upon the rights of another person purchasing a tract in his rear under the same law, and upon the same terms and

conditions. There were two acres more than that quantity, without, in any manner, conflicting with the rights of the other vendee.

Could an ordinary vendor, having made such a sale, afterwards take forty acres of the land, so sold, and give it to his other vendee? His deed to that effect would have no effect. So neither can the patent issued by the United States, under similar circumstances, have that effect.

As vendors of land, perhaps, the government could not, for their own exclusive interest, succeed in annulling a patent, unless in those cases of error, or fraud, for which an ordinary vendor could annul his deed. But latterly it has been held by the Supreme Court of the United States, that they would disregard patents obtained contrary to law, in cases where individuals had previously acquired under the government an adverse title. In the case of the *United States* v. *Hughes*, that tribunal, at its last term, disregarded and annulled a patent, the United States suing for an individual, to whom they had first legally sold the land. So in the case of *Marsh* v. *Brooks*, and *Menard* v. *Massey*, 8 Howard, 233 and 293.

We have examined the case of *Pepper et als.* v. *Dunlop*, 9 R. R. 287, cited by the defendant's counsel, and find nothing decided in it adverse to these principles; nor in the opinion of the Attorney General Butler, 2 vol. Laws and Opinions, &c., relating to public lands, p. 213. The case of *Bagnell et als.* v. *Broderick*, principally relied upon by the counsel, was decided upon the technical distinction between law and equity, and between a legal and equitable title, which does not exist in this State. And, even in that case, the dissenting opinion of Justice McLean appears to us conclusive against the correctness of the decision, in which the majority of the court were unable to give relief against the grossest possible fraud, and that palpable on the face of the record.

The true principle is this: that the government is, in reality, the owner of the land. When the patent issues, it irrevocably divests the government of title, in favor of the patentee; but if the land already belongs to an individual, either by sale or legal confirmation, the subsequent issue of a patent to another person, inures to the benefit of the true owner.

In this case the Act of Congress was the authority to the register and receiver to sell the land in controversy to the plaintiff, by preëmption, in consideration of his being the proprietor of the front tract. His entry of the quantity to which he was entitled under the Act, and payment of the price, was the purchase from the government. This sale divested the title of the United States, and vested it in the plaintiff. Of the quantity, which he was entitled by the Act to purchase, he never can be divested by the government, which cannot sell a second time, nor retake that which has been lawfully sold; nor by an adverse claimant by virtue of a concurrent or subsequent purchase.

The authority given by the Act of Congress to the surveyor, to make an equitable division of the land between the claimants, is in affirmance of the Act authorizing each to purchase an equitable proportion of the land, and neither adds any thing to, nor takes any thing from, the rights of the parties. He is a ministerial officer, bound to perform this duty, not as he may choose, but equitably; and if he does not, the injured party may resort to a court for justice, or there would be a right without a remedy, in derogation of the first article of our Code of Practice.

It is true, Congress has confided much to the judgment of the surveyor, by directing him to divide the land in such manner as to him may appear equitable.

DUFRESNE
*v.*
HAYDEL.

And, if we had reason to believe that he really exercised his best judgment, or had even performed the duty in the presence of the parties, or having notified them to be present, so as to have afforded the injured party an opportunity of seeking redress from the higher officers of the government, we should be induced only by a palpable violation of equity to reverse the discretion confided to him. But in the present case it does not appear that the parties, interested in the survey, were present, or notified of the time it was to take place; and it is manifest that the surveyor did not attempt to make an equitable division between them. Such being the case, it was at least incumbent on the defendant to suggest or show some reason for his taking the forty acres of the plaintiff's land, and in default of his so doing, a court is bound to presume that the surveyor acted *ex parte*, and under the unjust influence of him who claims more than his share of the land, without reason, or even pretext, to justify it.

Both patents and surveys are so constantly made *ex parte*, and often without sufficient information by the ministerial officers of the general government, that they cannot be conclusive upon adverse claimants, and must necessarily be subject to judicial investigation and decision, when manifestly made in violation of Acts of Congress and private right.

The prescriptions of ten, twenty and thirty years, are plead. It is not clearly established by the evidence, that the plaintiff cannot obtain the quantity of land to which he is actually entitled, without taking any part of that which is actually possessed by the defendant, or by others for him. Even if it be absolutely necessary to do so, this is strictly and in good faith an action to settle boundaries which are imprescriptible. Code, art. 821.

For these reasons, the judgment of the district court is reversed; and it is adjudged and decreed, that a line be run by a surveyor, appointed by the district court, so as to give the plaintiff the quantity of one hundred and nineteen acres of the lands in the rear of his front tract; and that the defendant be condemned to pay the costs of the appeal; the costs of the district court, and the expense of the survey, to be borne equally by the parties; and the case is remanded to the district court, to direct the survey and make the division.

SLIDELL, J., dissenting.